**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| BETTY MCCANTS mother and next friend | ) | |
| on behalf of LAILA RICARD, a minor | ) | |
| | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| | ) | Case No. |
| vs. | ) | |
| | ) | |
| AT&T MOBILITY, LLC | ) | |
| | ) | |
| Defendant. | ) | |

**COMPLAINT**

NOW COMES the Plaintiff, BETTY MCCANTS as mother and next friend of LAILA RICARD (minor), by and through her attorneys TYLER LAW OFFICES P.C., and for her claims against defendant AT&T MOBILITY, LLC states as follows:

**INTRODUCTION**

1. Plaintiff Betty McCants brings this action on behalf of her daughter, Laila Ricard, a minor against defendant AT&T Mobility, LLC ("AT&T" or "Defendant") for violations of the Stored Communications Act, 18 U.S.C. § 2701 et seq. (the "SCA"), Telecommunications Act, 47 U.S.C. § 222 et seq., Negligence, Negligent and Intentional Infliction of Emotional Distress, and Negligent Supervision arising out of AT&T's intentional acts and negligence in allowing access to stored communication of Laila's mother, Betty McCants' telephone communications without authorization.

2. As a result of the release of private information by AT&T, Laila Ricard suffered damages for Plaintiff's privacy and safety in intentionally, through its agent(s), servant(s) and/or employee(s), disclosing her mother's private cellular telephone data to an unauthorized third party resulting in years of harm. At the time of the unauthorized release Plaintiff was eleven

1

years old. Lalia is currently seventeen years old; the statute of limitations has not tolled on her claim because she has not reached age 18 on the date this lawsuit is filed. Laila has suffered and continues to suffer severe emotional distress and other damages as a result of the unauthorized and willful release of the private information by AT&T and its agents, and employees.

3. The Telecommunications Act was enacted to regulate the communications industry and, in part, to promote the security and privacy of individuals' personal information that is transmitted and stored via telecommunications carriers.

4. The SCA (Stored Communications Act) prohibits a person or entity that provides an electronic communication service to the public from knowingly divulging to any person or entity the contents of an electronic communication while it is in electronic storage by that service. See 18 U.S.C. § 2702(a)(1).

5. Illinois law prescribes a duty for employers to exercise ordinary care in supervising their employees. This duty is owed to all individuals who could be foreseeably impacted by the employee or his employment.

6. Further, Illinois law prohibits conduct constituting an invasion to one's privacy through intrusion into seclusion. Illinois recognizes a cause of action against a person or entity who intentionally intrudes into the seclusion of another's private affairs in a manner that would be highly offensive to a reasonable person.

7. Despite its statutory and common law duties to refrain from intentionally disclosing its customers' stored communications and confidential proprietary network information concerning the use of its mobile telecommunications services, AT&T without authorization disclosed Plaintiff's Mother private and confidential information to an unauthorized third party in violation of its CPNI Customer Proprietary Network Information.

8. AT&T had knowledge of both its duty to refrain from such conduct, and the nefarious intentions of the third party to whom it intentionally disclosed Plaintiff's private and confidential information.

9. Further, despite having a duty to the general public to refrain from negligently supervising AT&T employees, AT&T failed to exercise these duties with the ordinary care expected of an employer in AT&T's position.

10. As a direct and foreseeable consequence of AT&T's reckless conduct, Betty McCants was subsequently attacked by a third party Mr. Kevin Ricard to whom AT&T had intentionally disclosed McCants' confidential proprietary information.

11. Ms. McCants' daughter Lelia was present before, during and after the vicious assault and battery of her mother. Because of the illegal and unauthorized release of CPNI, Lalia experienced and continues to experience emotional pain and suffering which is a direct cause of AT&T. Laila has had ongoing counseling since the release by AT&T. Her life has been negatively impacted by having to transfer schools, having to suffer through the death of her father, and severe depression upon hearing and seeing the assault of her mother by her father and fearing that she would also be assaulted.

12. As a result of AT&T's reckless indifference to Betty McCants' privacy and safety, Plaintiff her daughter incurred significant tangible and intangible damages including the death of her father by suicide. Ms. Betty McCants previously filed a lawsuit against AT&T (Case no. 1:20-cv–02544) which has been settled. Plaintiff Laila Ricard now brings this action to recover for these damages and hold AT&T accountable for its intentional violations of law.

## THE PARTIES

13. AT&T is a Delaware Limited Liability Company with its principal place of business at 1025 Lenox Park Blvd. NE, Atlanta, Georgia 30319.

14. AT&T has identified the following as its registered agent in Illinois: The Corporation Trust Company, 208 S. Lasalle Street, Suite 814, Chicago, Illinois 60604.

15. AT&T owns thousands of retail stores throughout the United States, including the store located at 8658 S. Cottage Grove Ave, in Chicago, Illinois.

16. Betty McCants is an individual and is the mother of Laila Ricard residing in Chicago, Illinois.

17. Laila Ricard is an individual minor residing in Chicago, Illinois.

## JURISDICTION AND VENUE

18. This Court has original subject matter jurisdiction over the Stored Communications Act and Telecommunications Act claims in this action pursuant to 28 U.S.C. § 1331. This Court has supplemental jurisdiction over the claims in this action that arise under the laws of the State of Illinois pursuant to 28 U.S.C. § 1367(a), because the state law claims are so related to the federal claims that they form part of the same case or controversy and derive from a common nucleus of operative facts.

19. This Court has personal jurisdiction over Defendant in that Defendant conducts significant business in this Judicial District and the acts and events giving rise to this lawsuit were undertaken in this Judicial District.

20. Venue is proper in this Court pursuant to 28 U.S.C. §1391(b)(1) in that a substantial part of the events or omissions giving rise to the claim occurred in this Judicial District.

## FACTUAL BACKGROUND

21. Betty McCants had a long-term intimate relationship with Kevin D. Ricard, the father of Laila Ricard, with whom she was living at the time that the incident giving rise to this action occurred.

22. Betty McCants and Kevin Ricard had been experiencing difficulties in their relationship, which, in the months leading up to October 11, 2019 when AT&T illegally gave the personal date to Kevin Ricard.

23. On October 4, 2019, Kevin Ricard stole multiple personal items belonging to Betty McCants including her cellular phone.

24. Concerned that Kevin Ricard would use her cellular phone to harass her contacts, Betty McCants contacted AT&T and requested service be suspended.

25. Service was suspended to Betty McCants' device as requested and remained suspended until she regained possession of her device on or about October 6, 2019.

26. When McCants called AT&T to restore service to her cellular device, the AT&T representative asked her why she had originally contacted AT&T to suspend service. McCants explained that Kevin Ricard had stolen her phone and that she was concerned about the prospect of unauthorized access to her device and personal information.

27. On October 11, 2019, Kevin Ricard visited the AT&T retail location at 8658 S. Cottage Grove Ave, Chicago, IL 60619.

28. Kevin Ricard entered the AT&T store and approached one or more AT&T employees (the "Agents") at the retail location and requested Betty McCants' confidential account information, including contacts, call history, and message history so that he could gain insight into her usage activity. While inside the store, Kevin Ricard had a visibly agitated demeanor.

29. Kevin Ricard was not authorized to access the account and had never been an authorized user on Betty McCants' AT&T account. However, the AT&T employees allowed Mr. Ricard to have unauthorized access to Betty McCants' CPNI. The AT&T employees and supervisors knew or should have known the information they allowed Kevin Ricard access to was explosive and dangerous. AT&T knew the disclosure of information was a serious violation of law which should have been reported to the authorities, as required by statute.

30. In return for access to this information, Kevin Ricard offered to pay $300. The AT&T Agents agreed and then began to attempt to access McCants' account data.

31. The Agents subsequently encountered difficulty accessing McCants' account due to the additional security that McCants had requested be placed onto her account following Kevin Ricard's prying actions in the days prior to this incident.

32. Undeterred, the Agents sought out and acquired a manager's override credentials that were necessary to bypass the additional security measures that had been placed on McCants' account.

33. A manager who was working at the time used his supervisory authority despite being fully aware of the purpose for which the Agents required the credentials, used manager credentials to bypass the additional security measures and accessed Plaintiff's information.

34. The Agents then showed Kevin Ricard McCants's confidential account information and allowed him to take numerous pictures of the information with his cellular phone.

35. After Kevin Ricard had been shown McCants' confidential information through the Manager's use of supervisory authority, Kevin Ricard paid the AT&T Agents $300 in cash as payment.

36. As a result of the knowledge that Kevin Ricard gained from the information that the Agents had provided, he began acting angry, frantic and hysterical. Kevin Ricard's condition became

6

so agitated that one of the Agents asked whether Kevin Ricard wanted them to call him an ambulance. Kevin Ricard declined, leaving the store shortly thereafter in an extremely agitated state.

37. On the evening of October 11, 2019 Betty McCants became aware of the intentional breach of her confidential account information when Kevin Ricard approached her, explained how he had obtained the information, and told her how "easy it was" for him to pay-off the AT&T employees in order to gain access to her account.

38. Immediately after this interaction with Kevin Ricard, Betty McCants contacted the AT&T fraud department via its 1-800 number to file a formal complaint and inform AT&T about the Agents' conduct. The McCants spoke with an individual named "Schelle" and was subsequently transferred to a fraud department manager named "Devin." The manager confirmed the breach of McCants's account and referenced particular time stamps evidencing when and where the account was accessed.

39. Over the next five days, Kevin Ricard harassed and threatened multiple individuals whose information he had obtained through his transaction with the Agents.

40. On October 17, 2019, Kevin Ricard confronted Betty McCants at her home while Plaintiff Laia Ricard was present and showed Betty McCants screenshots on his phone of the information that the Agents had provided him.

41. Shortly thereafter Kevin Ricard, while Laila Ricard was home, began to attack Laila's mom while berating her about the information he received from AT&T. Kevin Ricard proceeded to sexually assault Betty McCants, stripped McCants' clothes off, and ferociously beat McCants in the head and neck area.

42. Kevin Ricard bashed Ms. McCants' head into the washer/dryer and knocked her to the ground where he proceeded to punch and kick her.

43. Kevin Ricard then took a container of gasoline and proceeded to cover Betty McCants' body in gasoline while she remained on the ground. Kevin Ricard continued to punch and kick Betty McCants and forced her to drink the gasoline.

44. Minor Lalia Ricard heard the screams and cries for help in the home as her mother was being beaten and she could smell the gasoline that was being poured onto her mother to ignite her, placing Laila in fear for her own safety. Laila was so frightened during her mother's assault and battery that she did not leave her room; instead, she called her mother to find out what was happening. She heard her mother calling for help.

45. After Kevin Ricard had thoroughly soaked Betty McCants in gasoline, he took out a lighter. As Kevin Ricard was struggling with the lighter, Plaintiff's mom escaped and made her way outside.

46. After escaping her house and fleeing her attacker, Betty McCants collapsed in a nearby alley where she fell unconscious.

47. The police were called by several individuals including Betty McCants' neighbor who had heard Betty McCants screaming. Police arrived on the scene shortly thereafter and located Betty McCants lying unconscious in the alleyway where she had collapsed.

48. Betty McCants was transported to the Bernard A. Mitchell hospital at the University of Chicago Medical Center where she was admitted to the trauma department and treated for severe injuries. For a long period of time Lalia had to be separated from her mother, moved to a different area from her home, and usual school. She continues to suffer and undergo counseling because of the reckless acts of AT&T by its employees/agents.

49. Betty McCants received treatment for severe facial and neck wounds, including frontal scalp, left periorbital, and right premolar soft tissue damage and a hematoma, ligament and nerve

8

damage in her wrists, a concussion, eye trauma, bruising over her entire body, and severe chemical burns on her upper and lower body.

50. Betty McCants had difficulty breathing, significant facial swelling with her left eye swollen completely shut, and significant tenderness to palpation all over the body including the arm, chest wall, and upper back and neck.

51. McCants remained in the hospital until October 19, 2019. She was discharged with prescriptions for pain and eye trauma and was given instructions for follow-up care for physical therapy, concussion, and eye injuries at various outpatient facilities. She attended the numerous follow up appointments and weekly physical therapy sessions recommended by her doctor.

52. Betty McCants' daughter, Plaintiff Laila Ricard has seen all of the results of the assault and battery and has lived with the consequences of AT&T sharing the personal information of her mother with her dad.

53. Plaintiff continues to experience physical and mental suffering as a result of the incident and the injuries sustained by her mother. Plaintiff has been interviewed by the Illinois Department of Children and Family Services (DCFS) and suffers from flashbacks and recurring memories of the events, including the loss of her father. Since the incident on October 17, 2019, Plaintiff has participated in ongoing counseling and has been under a physician's care up to the present. As a result of the incident, Plaintiff was required to move and transfer to a non-traditional high school and continues to struggle with memories of the events.

54. Laila has a constant reminder of the October 17, 2019 incident based on seeing the permanent scarring on her mother's lip and her mother's persistent skin irritation, blemishes, and hair loss as a result of being drenched in gasoline. Her mother suffered significant eye

pain and disruption to her vision, some of which took over twenty weeks to heal with other permanent damage.

55. Betty McCants now requires the use of a wrist brace, undergoes continuous pain management therapy and may require a dangerous surgical procedure in the future to treat the damage done to her left wrist.

56. Having not received a return call or any update regarding her October 11, 2019 complaint, on October 22, 2019, plaintiff's mother again contacted the AT&T fraud department. On that date, a case identification number was generated, and investigator Maria Wasar was assigned to look into the October 6, 2019 breach of privacy incident.

57. In the several weeks following the attack, Plaintiff and her mom participated in numerous interviews with Chicago Police officers and detectives regarding this incident. The continued recollection of the events of October 17, 2019 and the persistent recounting of the gruesome details of her attack have caused Lalia to frequently return to a traumatic mental state.

58. On November 26, 2019, Plaintiff's mother received a letter from Nena Romano, Director of Compliance for AT&T. The letter stated that "we have confirmed your Customer Proprietary Network Information (CPNI) was recently accessed without your authorization." The letter further stated "[o]n behalf of AT&T, please accept my apology for this incident. Simply stated, this is not the way that we conduct business." See Exhibit A (AT&T's November 26, 2019 letter to Plaintiff).

59. A corporation can act only through the conduct of its agents.

60. AT&T is liable for the actions of the Agents as their conduct of accessing and disclosing CPNI is part of the duties for which they were employed to perform, and the manager/supervisor was given authority by AT&T to provide this information.

61.  The conduct occurred while the Agents were "on the clock" within normal store operating hours, the conduct was actuated, at least in part, in furtherance of AT&T's business and the conduct was ratified by a manager.

62. Plaintiff now brings this complaint to recover for her injuries caused by AT&T's willful disregard of and wanton indifference to Lalia's mother, Betty McCants' safety and privacy.

## **COUNT I**

### **Violation of § 2702(a)(1) of the SCA**

63. Plaintiff repeats and re-alleges the facts and allegations made in Paragraphs 1-63 of this Complaint as if fully set forth herein.

64. Section 2702(a)(1) of the SCA prohibits "a person or entity providing an electronic communication service to the public [to] knowingly divulge to any person or entity the contents of a communication while in electronic storage by that service."

65. AT&T is an entity providing an electronic communication service.

66. AT&T violated § 2702(a)(1) when AT&T knowingly and willfully divulged to Kevin Ricard the contents of Betty McCants text communications while those communications were in electronic storage held by AT&T.

67. AT&T's conduct through its supervisor and/or manager at the store was a conscious and voluntary departure from its statutory obligations imposed by § 2702(a)(1) and demonstrated its utter indifference to and conscious disregard for Plaintiff's safety and privacy.

68. Betty McCants and her daughter Laila suffered actual damages when AT&T disclosed McCants' confidential information to Kevin Ricard as the divulged information caused Kevin Ricard to become so enraged that he subsequently attacked McCants, resulting in physical, mental and economic injury to Laila.

69. Had AT&T abided by its statutory obligations to refrain from disclosing McCants confidential account information, Kevin Ricard would not have had access to the information that led him to attack the mother and subject his daughter Laila to the events which occurred on October 17, 2019.

70. As a result of AT&T's intentional conduct, pursuant to 18 U.S.C. § 2707, Plaintiff is entitled to the sum of the actual damages suffered by her in the amount of $10,000,000.00, statutory damages, punitive damages, and reasonable costs and attorney's fees incurred in pursuing her claims.

## COUNT II
### Violation of § 222 of the Telecommunications Act
### 47 U.S.C. § 222 et seq

71. . Plaintiff repeats and realleges the facts and allegations made in Paragraphs 1-70 of this Complaint as if fully set forth herein.

72. Section 222(a) of the Telecommunications Act mandates that every telecommunications carrier has a duty to protect the confidentiality of proprietary information of, and relating to, other telecommunication carriers, equipment manufacturers, and *customers*.

73. Section 222(c)(1) of the Telecommunications Act mandates that except as required by law or with approval of the customer, a telecommunications carrier may only use, disclose, or permit access to CPNI in its provision of the telecommunications service from which such information is derived or services necessary to, or used in the provision of such telecommunications service.

74. All or part of the information shared by AT&T with Ricard on October 11, 2019 constitutes CPNI.

75. AT&T is a telecommunications carrier as defined by the Telecommunications Act.

76. AT&T violated §§ 222(a) and 222(c)(1) when it failed to protect the confidentiality of Betty McCants' confidential proprietary information and CPNI by intentionally and unlawfully disclosing the same to an unauthorized third party.

77. In its November 26, 2019 letter to Plaintiff AT&T explicitly acknowledges that AT&T breached its duty to safeguard Betty McCants' confidential proprietary information and CPNI by stating: "We have confirmed that your Customer Proprietary Network Information (CPNI) was recently accessed without your authorization" and "On behalf of AT&T, please accept my apology for this incident." See Exhibit A.

78. As a direct and foreseeable result of AT&T's willful disclosure of Betty McCants' confidential proprietary information and CPNI to an unauthorized third party, Betty McCants' was subsequently physically attacked by the individual to whom AT&T had disclosed the same, thereby causing Laila Ricard physical, mental and economic loss.

79. Section 206 of the Telecommunications Act prescribes liability for any common carrier that commits any act or omission deemed unlawful by the Telecommunications Act.

80. Additionally, § 207 of the Telecommunications Act creates a private right of action for any person who is injured as a result of a common carrier's violation of any of the provisions of the Telecommunications Act.

81. AT&T is a common carrier as defined by the Telecommunications Act.

82. AT&T is liable to Plaintiff for the damages that she has suffered as a consequence of AT&T's violation of the Telecommunications Act, as well as the reasonable attorney's fees and costs incurred by Plaintiff in pursuing her claims.

## COUNT III

### Negligence

83. Plaintiff repeats and re-alleges the facts and allegations made in Paragraphs 1-82 of this Complaint as if fully set forth herein.

84. The Telecommunications Act, SCA, AT&T's Privacy Policy, and AT&T's own statements also establish the existence of a duty of care to Betty McCants concerning the security of her confidential information, including her CPNI. See Exhibit A (Letter from AT&T); Exhibit B (AT&T's Privacy Policy) ("We use CPNI internally and share it outside of AT&T only when conforming with applicable regulations and orders from the Federal Communications Commission. . . . "We do not share your CPNI with anyone outside of the AT&T affiliates defined above or our authorized Agents or vendors without your consent, with the following authorized exceptions: Court orders; as authorized by law; fraud detection to provide you service and route your calls; for network operations and security; aggregate (grouped) information and information that doesn't identify you personally. . . . "It is your right and our duty under federal law to protect the confidentiality of your CPNI.")

85. AT&T breached its duty of care when it had insufficient security safeguards to protect the CPNI and failed to timely act on the Plaintiff's mother's report of access and probable misuse. In addition, the AT&T employees, supervisors, and managers accepted compensation in return for providing Betty McCants' confidential proprietary information and CPNI to an unauthorized third party. The employees, managers, and supervisors used the authority given to him or her by AT&T to release the CPNI.

86. The AT&T supervisor/manager before and after releasing the CPNI knew or should have known that Betty McCants and her family were in imminent danger when the information was released to Kevin Ricard; they failed to warn Betty McCants and her family despite them

14

having a special relationship with her and despite their duty to protect her private information.

87. AT&T's negligent conduct was an extreme, conscious, and voluntary departure from the standard of care that would have reasonably been expected under the circumstances.

88. AT&T's conduct demonstrated its utter indifference to and conscious disregard for Betty McCants' safety and privacy.

89. AT&T had a duty to safeguard CPNI even from its rebel employees. AT&T in this instance did not.

90. Had AT&T abided by its duty to safeguard Betty McCants' confidential proprietary information and CPNI, Kevin Ricard would not have had access to the information that led him to attack her in the presence of Lalia, causing Laila severe emotional damage.

91. At the time AT&T breached its duty of care, it was foreseeable and even probable that the confidential proprietary information and CPNI that AT&T provided to Kevin Ricard would cause him to attack Betty McCants given his visible anger and disclosed reasons for wanting the information and that the fallout from its release would cause other parties serious harm.

92. As a direct and proximate result of AT&T's breach of its duty of care, Plaintiff Lalia has suffered and will continue to suffer substantial damages, including medical and other healthcare-related expenses, and physical and mental pain and suffering.

93. AT&T is liable to Plaintiff Laila for the damages she has suffered and will continue to suffer. AT&T is also liable for punitive damages due to AT&T's reckless disregard for and indifference to Plaintiff's mother Betty McCants' privacy, safety, and security leading to the years of past and future harm to Lelia.

## COUNT IV
### Intentional Infliction of Emotional Distress

94.  Plaintiff restates and re-alleges the facts and allegations made in Paragraphs 1-93 of this Complaint as if fully set forth herein.

95.  Plaintiff hereby further asserts a claim against AT&T for its intentional infliction of emotional distress.

96.  AT&T failed to protect the confidentiality of Betty McCants' private information and allowed the unauthorized disclosure to a third party without Plaintiff's mother, Betty McCants' permission

97.  AT&T's conduct as described in the foregoing paragraphs was extreme and outrageous and would cause a person of ordinary sensibilities to suffer emotional distress.

98.  AT&T intended to cause, or acted with reckless disregard for the probability that its conduct would cause, severe emotional distress.

99.  As a direct and proximate result of AT&T's conduct, Plaintiff Laila Ricard suffered severe and lasting emotional distress, including fright, worry, trauma, depression, and anxiety that no minor nor reasonable person could be expected to endure.

100.    But for AT&T's conduct in releasing her Mother's CPNI, Plaintiff would not have experienced the extreme emotional distress that she has suffered as a direct result of AT&T's disclosure of Plaintiff's private account information and CPNI.

101.    Further, Plaintiff's extreme emotional distress was foreseeable, as AT&T had knowledge of the purpose for which Kevin Ricard sought access to Plaintiff's private information and CPNI.

102.    AT&T's conduct described in the foregoing paragraphs was willful and was undertaken with reckless indifference to Plaintiff's mother's rights.

103.    AT&T is liable for Plaintiff's damages caused by its intentional infliction of emotional distress. As a result of AT&T's intentional conduct, Plaintiff is entitled to the sum

of the actual damages suffered by her in the amount of $10,000,000.00, and reasonable costs and attorney's fees incurred in pursuing her claims. Further, because AT&T's conduct was willful and wanton, Plaintiff is entitled to punitive damages.

## COUNT V
### Negligent Infliction of Emotional Distress

104.     Plaintiff restates and re-alleges the facts and allegations made in Paragraphs 1-103 of this Complaint as if fully set forth herein.

105.     Plaintiff hereby further asserts a claim against AT&T for Negligent Infliction of Emotional Distress.

106.     Plaintiff Laila Ricard was in the home at the time of the physical assault and battery of her mother and heard the abuse and her mother's cry for help as her father assaulted and battered her mother. Plaintiff feared she would be next, after her mother escaped the attempted murder and the ambulance arrived, she went to the ambulance and saw her mother beaten and soaked in gasoline all caused by the reckless and intentional release of the private secured information to Mr. Kevin Ricard from AT&T.

107.     AT&T's conduct as described in the foregoing paragraphs was extreme and outrageous and would cause a person of ordinary sensibilities to suffer emotional distress.

108.     AT&T's conduct was extreme and outrageous, intentionally or recklessly causing severe emotional distress.

109.     The AT&T supervisor/manager before and after releasing the CPNI knew or should have known that Betty McCants and her family were in imminent danger when the information was released to Kevin Ricard; they failed to warn Betty McCants and her family despite them having a special relationship with her and despite their duty to protect her private information and the duty to protect Ms. McCants from harmful acts of a third party.

110.     Plaintiff Lalia continues to suffer from anxiety and fear, depression, post-traumatic stress, humiliation, embarrassment, sleep disturbance, and deep sadness due the events which AT&T caused her family.

111.     AT&T intended to cause, or acted with reckless disregard for the probability that its conduct would cause, severe emotional distress.

112.     Failed to timely notify law enforcement and others as required under the statute after the CPNI breach occurred.

113.     Failed to timely notify the Plaintiff's mother of Lalia and others involved  after the CPNI breach occurred.

114.     Defendant was at all times fully aware of their obligation to protect private information of current, former, and prospective customers. Defendant was also aware of the significant repercussions that would result from their failure to do so.

115.      As a direct and proximate result of AT&T's conduct, Plaintiff suffered severe and lasting emotional distress, including fright, worry, trauma, and anxiety that no reasonable person could be expected to endure. In addition, Plaintiff Laila Ricard suffered and continues to suffer from and currently receives counseling for post-traumatic stress disorder (PTSD), severe anxiety and/or panic attacks, depression and hopelessness, insomnia and sleep disturbances, fear or phobias related to the traumatic events, humiliation and/or embarrassment, and loss of enjoyment of life.

116.     For a long period of time Lalia had to be separated from her mother, moved to a different area from her home, and usual school. She continues to suffer and undergo counseling because of the reckless acts of AT&T by its employees/agents.

117.     But for AT&T's conduct, Plaintiff would not have experienced the extreme emotional distress that she suffered as a direct result of AT&T's disclosure of Plaintiff's private account information and CPNI.

## COUNT VI
### Negligent Supervision

118.     Plaintiff pleads this Count VI in the alternative to Counts I through V. Plaintiff restates and re-alleges the facts and allegations made in Paragraphs 1-117 of this Complaint as if fully set forth herein.

119.     An employer, such as AT&T, has a general duty to reasonably supervise all of its employees to make sure they engage in appropriate behavior and follow the law and any rules of employment.

120.     This duty is owed to all individuals who could be foreseeably impacted by the employees or their employment. Defendant knew and understood unprotected or exposed CPNI in the custody of third parties like Mr. Kevin Ricard would be sought after by nefarious third parties seeking to perform illegal use of CPNI through unauthorized access.

121.     At all relevant times, Defendant AT&T through its servants, agents, and/or employees knew, or reasonably should have known, of the importance of safeguarding the CPNI of Plaintiff mother and of the foreseeable consequences that would occur if Defendant's data security system was breached, including emotional distress, criminal acts and destruction of families and relationships.

122.     Accordingly, AT&T had a duty to supervise the employees working at its 8658 S. Cottage Grove Ave. location in Chicago, Illinois.

123.     AT&T's employees are given access to and are responsible for the safeguarding of AT&T's customers' confidential proprietary information and CPNI.

124.     This Customer Proprietary Network Information and CPNI includes sensitive and confidential data such as customers' usage records, billing information, location data, contact information, photographs, videos, application data, and records of private correspondence.

125.     An employer in AT&T's position could have and should have reasonably foreseen that, absent adequate supervision, employees could abuse their access to a customer's confidential proprietary information and CPNI.

126.     Defendant was at all times fully aware of their obligation to protect the Private Information of current, former, and prospective customers. Defendant was also aware of the significant repercussions that would result from their failure to do so.

127.     AT&T failed to adequately monitor the conduct of its employees at its 8658 S. Cottage Grove Ave. location in Chicago, IL, as demonstrated by the unlawful conduct of the Agents and store manager.

128.     As such, AT&T breached its duty to supervise the employees that it had hired to conduct its business.

129.     Defendant was at all times fully aware of their obligation to protect the Private Information of current, former, and prospective customers. Defendant was also aware of the significant repercussions that would result from their failure to do so.

130.     Defendant Failed to Comply with Industry Standards.

131.     Defendant owed a common law duty to Plaintiffs to exercise reasonable care in obtaining, using, and protecting their Private Information from unauthorized third parties.

132.     The legal duties owed by Defendant to Plaintiffs include, but are not limited to the following:

      a.   To exercise reasonable care in obtaining, retaining, securing, safeguarding, deleting, and protecting the Private Information of  Plaintiffs in its possession;

b. To protect Private Information of Plaintiffs in its possession using reasonable and adequate security procedures that are compliant with industry-standard practices; and

c. To implement processes to quickly detect a data breach and to timely act on warnings about data breaches, including promptly notifying local and federal authorities of Plaintiff's mother's Data Breach.

d. To have had sufficient safeguards, sufficient checks and balances, such that AT&T would be alerted if its agent/managers were illegally releasing CPNI.

133. Defendant knew or should have known the risks of collecting and storing Private Information and the importance of maintaining secure systems, especially in light of the fact that data breaches have been surging in the past 5 years.

134. Plaintiff was damaged by AT&T's breach of its duty to supervise.

135. As a direct result of AT&T's failure to supervise its employees, Kevin Ricard was able to obtain McCants confidential proprietary information which led him to attack Laila's mother in her presence.

136. AT&T had a duty to supervise its agents and employees which would have prevented the unlawful dissemination of Plaintiff's mother's confidential proprietary information and CPNI and the resulting substantial injuries suffered by Plaintiff Laila Ricard.

137. AT&T is therefore liable for its negligent supervision of the employees which directly and proximately caused Plaintiff's substantial injuries, including: past and future medical and other healthcare-related expenses, lost income, diminished earning capacity, and physical and mental pain and suffering.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff BETTY MCCANTS as mother and next friend of LAILA RICARD (minor), requests that this Court enter judgement in its favor and against AT&T Mobility, LLC by:

a. Awarding Plaintiff Laila Ricard actual damages pursuant to 18 U.S.C. §2707 as a result of AT&T's violations of the Stored Communications Act;

b. Awarding Plaintiff Laila Ricard actual damages pursuant to 47 U.S.C. §206 as a result of AT&T's violations of the of the federal Telecommunications Act;

c. Awarding Plaintiff Laila Ricard punitive damages pursuant to 18 U.S.C. §2707(c) as a result of AT&T's willful and intentional violations of the Stored Communications Act;

d. Awarding Plaintiff Laila Ricard general and special damages for her past and future pain and suffering and physical and emotional anguish and in excess of ten million dollars $10,000,000 plus pre-judgement interest, as a result of AT&T's negligent conduct;

e. Awarding Plaintiff Laila Ricard punitive damages due to AT&T's gross negligence demonstrating its reckless disregard for and indifference to Plaintiff' mother's privacy, safety, and security in an amount to be determined by the jury;

f. Awarding Plaintiff Laila Ricard all attorneys' fees and other litigation costs reasonably incurred by Plaintiff in pursuit of her claims pursuant to 18 U.S.C. §2707(b) & (c); and

g. Granting any such other relief as this Court deems just and necessary.

## JURY DEMAND

The Plaintiff, BETTY MCCANTS as mother and next friend of LAILA RICARD (minor), demands a trial by jury of all issues so triable pursuant to Rule 38 of the Federal Rules of Civil Procedure.

/s/Taylor Tyler
Taylor Tyler

Timothy R. Tyler -ttyler@tylerlawchicago.com
Taylor Tyler - tlt@tylerlawchicago.com
**TYLER LAW OFFICES P.C.**
120 West Madison -Suite 204
Chicago, Illinois 60602
312-920-1745

## CERTIFICATE OF SERVICE

I, Taylor Tyler, hereby certify that I have served the attached document by causing it to be delivered by electronic means via the CM/ECF System to all attorneys of record on **February 9, 2026.**

/s/Taylor Tyler
Taylor Tyler

Timothy R. Tyler -ttyler@tylerlawchicago.com
Taylor Tyler - tlt@tylerlawchicago.com
**TYLER LAW OFFICES P.C.**
120 West Madison -Suite 204
Chicago, Illinois 60602
312-920-1745